UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                    )
ERIC TRAVERS, MICHAEL BOUDREAU,       )
JOSEPH COLELLA, CLIFFORD ARPINO,      )
MICHAEL MARINI, and ROCCO MARINI,     )
                Plaintiffs,                         )
                                                    )
v.                                                  )  Civil Action No. 04-12635-RWZ
                                                    )
CITY OF NEWTON, MASSACHUSETTS,        )
and DAVID B. COHEN, In his capacity as        )
Mayor of the City of Newton, Massachusetts;   )
                Defendants.                       )
_____)

PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF NEWTON'S MOTION TO
DISMISS PURSUANT TO RULE 12(b)(7) OR, IN THE ALTERNATIVE, MOTION FOR
AN ORDER OF JOINDER OF A NECESSARY PARTY

I.       INTRODUCTION

        The Plaintiffs, Eric Travers, Michael Boudreau, Joseph Colella, Clifford Arpino,

Michael Marini, and Rocco Marini, hereby file this opposition to the Defendant City of

Newton's Motion to Dismiss Pursuant to Rule 12(b)(7) or, in the alternative, Motion for an

Order of Joinder of a Necessary Party.  In support of this opposition, the Plaintiffs state that

the Commonwealth Human Resources Division (HRD) is not a necessary party to this action

pursuant to Rule 19(a) and thus should not be joined in this action.  In the alternative, should

the Court determine that the HRD is a necessary party, the Plaintiffs respectfully request that

the HRD be joined as a party in lieu of dismissal of this action.

II.      STATEMENT OF RELEVANT FACTS

        On February 11, 1974, in the case of Boston Chapter, NAACP v. Beecher, 371 F.

Supp. 507 (1974) (Beecher), this Court held that the Commonwealth and City of Boston had

engaged in discrimination against black and Hispanic firefighter applicants in Boston and other communities in the Commonwealth. To remedy the unlawful race discrimination, the Court ordered that, for all Civil Service communities with a minority population of greater than 1 percent,[1] the Director of the Division of Civil Service (now the Administrator of the Human Resources Division) should create eligibility lists for entry-level firefighter positions that rank one minority candidate for every three non-minority candidates.[2] Id. at 520-523. Such race-based consideration was to continue until "a city or town achieve[d] a complement of minorities commensurate with the percentage of minorities within the community." Id. at 523 ¶ 12.

After the First Circuit affirmed this Court's Beecher decision, 504 F.2d 1017 (1st Cir. 1975), the parties entered into an Interim Consent Decree, [Exh. A], and an Agreement to Effectuate Interim Consent Decree, [Exh. B], which effectuated the Court's Beecher decree. These subsequent agreements provided that a community would be exempted from the Beecher decree only after "the appointing authority [of the community] first petitioned the Division that the percentage of post-probationary minority uniformed personnel equals the percentage of minorities in the city or town served by said department . . . ." [Exh. B ¶ 11.]

Since it had a minority population of greater than 1 percent in 1975, the City of Newton fell under the Beecher decree and thereafter began receiving certification lists from the Commonwealth ranking one minority candidate for every three non-minority candidates. By at least 2001, the complement of minority firefighters in the City of Newton exceeded

---

[1] The decree defines "minority" as "black and Spanish-surnamed" individuals. Id. at 520-523. For ease of reference, this opposition adopts that formulation, and the term "minority" is used herein to refer only to black and Hispanic individuals.

[2] The ratio was one minority candidate for every one non-minority candidate in the cities of Boston and Springfield. Id. at 522 ¶ 9.

the percentage of minorities residing in the City. [Answer ¶ 12.] Though it was incumbent on the City to petition the Commonwealth HRD to be released from the terms of the <u>Beecher</u> decree, the City never did so, and it therefore continues to use race-based certification lists in hiring firefighters. [<u>See</u> Exh. C (HRD list of communities still covered by the <u>Beecher</u> decree).]

Had the City properly petitioned to be excused from the terms of the decree, such action would not have impeded the City's ability under civil service law to make hiring decisions that account for race and diversity in a manner that is consistent with Supreme Court precedent. <u>See e.g.</u>, <u>Grutter v. Bollinger</u>, 539 U.S. 306, 342 (2003) (accepting a non-quota-based affirmative action approach for the University of Michigan Law School). For example, the City would be justified in using its civil service bypass authority to hire minority applicants over higher-scoring non-minority applicants if such hiring was narrowly tailored to achieve the goal of remedying racial discrimination. <u>See</u> <u>Boston Police Superior Officers Federation v. City of Boston</u>, 147 F.3d 13 (1st Cir. 1998) (<u>BPSOF</u>) (upholding City's decision to promote minority candidate over non-minority candidate even though such race-based promotion was not compelled by a consent decree).

## III. <u>ARGUMENT</u>

Because complete relief can be achieved from the Defendant City, and because the Commonwealth's absence neither impairs the Commonwealth's interests nor subjects the City to multiple litigation or inconsistent obligations, the Commonwealth HRD is not a necessary party and should not be joined in this action.

As an initial matter, the Defendant City erred as a matter of law in citing the four factors from <u>Provident Tradesmens Bank & Trust Co. v. Patterson</u>, 390 U.S. 102 (1968)

(<u>Provident Tradesmens</u>), as the factors to consider in deciding a compulsory joinder motion under Rule 19(a). As the Court made clear in describing the four factors, those "interests" are to be considered when determining under ***Rule 19(b)*** whether, "in equity and good conscience, the court should proceed without a party whose absence from the litigation is compelled." <u>Id.</u> at 109. The <u>Provident Tradesmens</u> court offered no guidance on determining whether a party is a necessary party under Rule 19(a), since the Court "assume[d], at the outset," that the party at issue did indeed fall within the category of necessary parties under Rule 19(a). <u>Id.</u> at 108.

In determining whether a party is necessary or indispensable under Rule 19(a), this Court has noted that each case should be examined pragmatically on a case-by-case basis. <u>Lambergs v. Total Health Systems, Inc.</u>, 1989 WL 63243 at *3 (D. Mass. Jun. 5, 1989) (citing cases). In making a determination regarding a party's necessity, this Court considers the three criteria set forth in Rule 19(a), "the presence of even one of which establishes that a person is a necessary party." <u>Id.</u> Those criteria are:

(1) under subsection 19(a)(1), whether complete relief cannot be accorded among the parties in the person's absence;

(2) under subsection 19(a)(2)(i), whether the person claims an interest in the subject matter and disposition of the action in his or her absence may impair his or her ability to protect that interest; and

(3) under subsection 19(a)(2)(ii), whether the person claims an interest in the subject matter and disposition of the action and resolution of the case without the person may subject the already existing parties to multiple litigation or inconsistent legal obligations.

Fed. R. Civ. P. 19(a); <u>see also</u> <u>Lambergs</u>, 1989 WL 63243 at *3-4.

Here, the Defendant City has failed to show that the HRD is a necessary party under these factors. Under the terms of the <u>Beecher</u> decree, it was the City that had the obligation to determine when it had achieved parity and to then petition the Commonwealth to be released from the decree. The Commonwealth HRD was not required to take any action to revert to non-race-based certifications unless and until the City made an appropriate petition. In this regard, the Defendant City is responsible for its own improper actions in continuing its race-based hiring program, and complete relief can be obtained from the City for this constitutional violation. Therefore, it is unnecessary to join the HRD as a party to this action pursuant to Rule 19(a)(1).

As to Rule 19(a)(2), the City has failed to demonstrate that the Commonwealth HRD has an interest in the subject matter and disposition of this action. This action does not allege any wrongdoing on the part of HRD or challenge the basis of the <u>Beecher</u> decree, to which the Commonwealth is a party. Rather, this action merely alleges as unconstitutional the actions of the Defendant City in failing to take the required steps under the <u>Beecher</u> decree to be exempted from the terms of the decree despite the fact that the City has long ago reached racial parity. In addition, to the extent that the HRD has any liability under the <u>Beecher</u> decree for failing to validate its entry-level firefighter exam, such liability would not expose the City to further litigation or inconsistent obligations, since the City already has the authority to use race in its hiring decisions, so long as such hiring is consistent with constitutional principles. <u>See, e.g.</u>, <u>Grutter</u>, 539 U.S. 306; <u>BPSOF</u>, 147 F.3d 13. Therefore, the Commonwealth HRD is not a necessary party pursuant to Rule 19(a)(2)(ii) as the City has alleged.

Finally, in the seminal case in this area, <u>Quinn v. City of Boston</u>, 325 F.3d 18 (1st Cir. 2003), in which the First Circuit struck down the City of Boston's continued adherence

to the <u>Beecher</u> decree, neither the HRD nor any other instrumentality of the Commonwealth was a party to the case.  Though the HRD was not a party to that case, the First Circuit had no trouble assessing liability, and this Court had no trouble according full and proper relief to the Plaintiffs.  <u>Id.</u>, <u>decision on remand</u>, 279 F.Supp.2d 51 (D. Mass. 2003).  Since it was not a necessary party in that matter, there is simply no reason to join the Commonwealth HRD as party in this matter.

IV.    <u>CONCLUSION</u>

      Based on the foregoing, this Court should find that the Commonwealth HRD is not a necessary party to this action pursuant to Rule 19(a) and should deny the Defendant's motion to dismiss as well as its alternative motion to join the HRD as a party.

      To the extent that this Court determines that the Commonwealth HRD is a necessary party pursuant to Rule 19(a), this Court should order that the HRD be joined as a party, in lieu of dismissing this action, because, as the Defendant has admitted in its papers, joinder of the HRD is feasible under Rule 19(a) because the Commonwealth is subject to service of process and because joinder of the Commonwealth will not deprive the Court of its subject matter jurisdiction.

                    Respectfully submitted,

                    ERIC TRAVERS, MICHAEL BOUDREAU,
                    JOSEPH COLELLA, CLIFFORD ARPINO,
                    MICHAEL MARINI, and ROCCO MARINI,

                    By their attorneys,

                    __s/Alfred Gordon_____
                    Harold L. Lichten, BBO # 549689
                    Alfred Gordon, BBO #630456
                    Pyle, Rome, Lichten, Ehrenberg &
                        Liss-Riordan, P.C.
                    18 Tremont Street, Suite 500
                    Boston, MA 02108
Date:   March 15, 2005        (617) 367-7200

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served on the attorneys of record for each party by hand delivery on March 15, 2005.

                    __s/Alfred Gordon_____
                    Alfred Gordon

7

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | No. 73-269-F |
| CITY OF BOSTON, et. al. | ) | |
| Defendants | ) | |
| | ) | |
| BOSTON CHAPTER, NAACP, et. al. | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | No. 72-3060-F |
| NANCY B. BEECHER, et. al. | ) | |
| Defendants | ) | |

## INTERIM CONSENT DECREE

This case having come on for a hearing before this
Court in 1973, and the Court having entered an opinion
and decree on February 8, 1974, and the Court of Appeals
for the First Circuit having affirmed, and the defen-
dants' petition for writ of certiorari to the Supreme
Court of the United States having been denied, and in
view of the extreme necessity that a new examination
be administered, the parties consent to entry of this
Interim Consent Decree to permit the administration
of a new examination in accordance with the Decree of
February 8, 1974. Wherefore, the parties agree that:

293

- 2 -

1. The defendant, Director of Civil Service, [hereinafter Director shall mean the Director, his successors, or after July 1, 1975, the Personnel Administrator] in implementing the February 8, 1974, Decree, shall administer a written test known as the IPMA B-1 (m) examination to all applicants for the fire service in cities and towns within the jurisdiction of Civil Service. This examination shall be administered only after defendants have satisfied the recruitment obligations imposed by paragraphs 5 and 6 of the Decree of February 8, 1974. The examination shall be given on or before July 31, 1975.

2. With regard to the validity of the IPMA B-1 (m) examination, the plaintiffs take no position as to the ultimate validity of IPMA B-1 (m) [hereinafter the "July Exam"] and agree to its use to establish an eligibility list for the certification of firefighters in Massachusetts for the sole purpose of implementing the Decree of February 8, 1974, subject to the conditions established by this Interim Consent Decree. Since the plaintiffs believe that the ranking of individuals on eligibility lists resulting from this test may have an adverse racial impact on Black and Spanish-surnamed persons the plaintiffs do not agree to the use of the results of this test for any purpose other than the implementation of the method and ratios of certification required by the February 8, 1974, Decree.

294

- 3 -

3. At least sixty (60) days prior to the
Administration of the July Exam, the Director shall
submit to the Parties a report detailing the
Director's proposed court ordered recruitment program.
The plaintiffs shall have ten (10) days to object to the
Director's program. Any dispute between the parties
regarding the recruitment program, which cannot be
resolved, will be resolved by this Court upon motion
of any party. Any objection to the recruitment
program, not made in writing within ten (10) days, shall
be deemed to have been waived.

4. At least sixty (60) days prior to the
administration of the July Exam, the Defendant, Boston
Fire Commissioner, [hereinafter the Boston Fire Com-
missioner, shall mean the current Commissioner and his
successors] shall submit to the parties a report
detailing the City of Boston's proposed court ordered
recruitment program. The plaintiffs shall have
ten (10) days to object to the Boston Fire Commissioner's
program. Any dispute between the parties regarding the
recruitment program, which cannot be resolved, will be
resolved by this Court upon motion of any party. Any
objection to the recruitment program, not made in
writing within ten (10) days, shall be deemed to have
been waived.

295

- 4 -

5.  With respect to the administration of the July Exam, the cut-off score for determining which candidates have passed the Exam will be set by agreement of the parties.  Any party may submit the question of the appropriate cut-off score to this Court for resolution.  In any event, the cut-off score should be set so that the method and ratios of certification described in paragraphs 8 through 12 of the February 8, 1974, Decree can be implemented.

6.  If subsequent to the administration of the July Exam it appears that pools C or D are inadequate or will become depleted so as to prevent the effectuation of the method and ratios of certification described in paragraphs 8 through 12 of the February 8, 1974, Decree, the Director shall administer a second Fire Fighters Examination.  It shall be left to parties, or the Court, upon motion of any party, to determine what examination will be given, which candidates will be eligible to take the examination; and the time period within which the examination will be given.

7.  The Director shall notify the plaintiffs and supply evidence to the plaintiffs whenever a particular city or town has achieved a complement of Black and Spanish-surnamed firefighters commensurate with the percentage of minorities within the community or that the fire department is serving a city or town with less than 1% Black and Spanish-surnamed population.  The

296

- 5 -

plaintiffs shall have thirty (30) days to object to the
Director's notification. If such objection is not made
within thirty (30) days, the particular city or town
will no longer be subject to paragraphs 8-12 of the
Decree of February 8, 1974, and certification to that
city or town will be made according to existing Mass-
achusetts law. Any disputes between the parties in this
regard which cannot be resolved by the parties, will be
resolved by this Court upon motion by any of the parties
(Exhibit A, Fire Service under Civil Service, with
racial compositions of each fire department as of
Spring, 1975 has been furnished to the parties).

8.  The Director shall require all candidates for
fire fighter positions to provide the following in-
formation at the July Exam: Whether the candidate is
(a) caucasian (white); (b) black; (c) Spanish-surnamed
(i.e. the candidate was born in a Spanish-speaking
country or, if the candidate was born in the United
States, the candidate was raised in a home where the
primary language was Spanish); (d) Other.  Within
sixty (60) days after the administration of the July
Exam, the Director will furnish the parties with a
summary of the racial composition of the candidates
examined.

- 6 -

9. Within sixty (60) days after the July Exam
has been graded, the Director will submit a report to
the parties showing the results by race of all -
persons taking said Exam, and the name, address and
grade of each Black or Spanish-surnamed individual.
Parties shall also receive an item analysis of the
results of the Exam, by race.

10. Spanish-surnamed applicants for the July Exam
will be given the option of taking the test in Spanish.
However, the Director shall require such persons who
take the Exam in Spanish to pass a literacy examination
to demonstrate their ability to read and write the
English language. Said literacy examination will be the
Davis Reading Test.

11. Within thirty (30) days after the administration
of the Davis Reading Test, the Director shall submit
to the parties, a report showing the number of
individuals who took the July Exam in Spanish, and the
pass/fail rate of those individuals on the Davis Reading
Test.

12. Following establishment of the eligibility list
based on the July Exam, and every six (6) months there-
after until expiration of the eligibility list from the
July Exam, counsel for all parties will be furnished
with a copy of the eligibility list for each fire depart-
ment subject to the jurisdiction of the Director.
Further, counsel for all parties will receive from the
Director the following information:

298

-7-

On a monthly basis:

(a)  A copy of the requisition, certification, and report on certification for each requisitioning fire department.

(b)  The name of each Black and Spanish-surnamed candidate from said eligibility lists whose employment is terminated.

(c)  The name of each fire fighter whose transfer between fire departments has been approved by the Director subsequent to the date of this Interim Consent Decree.

Every three months:

(d)  The name and address of each Black and Spanish-surnamed candidate who has passed the July Exam including the status of each such candidate's eligibility, with explanation of such status.

13.  The applicants who pass the July Exam shall be required to pass a test of physical fitness.  Said physical fitness test shall not include a swim component unless the appointing authority has petitioned the Director no later than the establishment of the eligibility list that in their opinion a swim component is necessary for the performance of the duties of the position.  Said petition shall not be approved by the Director unless the petition includes a validation study which demonstrates the necessity for a swim component, and the reason why satisfaction of said swim component cannot be deferred until completion of the

-8-

probationary period. The parties reserve their right to move this Court to resolve any dispute under this paragraph.

14. The Director shall impose upon applicants for entrance to the fire service no educational qualification unless the appointing authority has petitioned the Director no later than the date of establishment of the eligibility list that in their opinion an educational qualification is necessary for the performance of the duties of the position. The Director shall not approve said petition unless the petition includes a validation study which demonstrates to the Director the necessity for such educational qualification. The parties reserve their right to move this Court to resolve any dispute under this paragraph.

15. The Boston Fire Commissioner agrees that for the purpose of certifying candidates from the eligibility list from the July Exam, he will not require said candidates to pass a swim test.

16. The Boston Fire Commissioner agrees that he will not impose an educational qualification for certification of candidates from the eligibility list resulting from the July Exam.

17. The Director shall have the discretion to disqualify applicants with criminal records or on the basis of bad moral character even though such

300

-9-

individuals do not have criminal convictions, in
accordance with guidelines established by the Director,
and incorporated herein, for use of records. (See attached
Exhibit D). All individuals so disqualified shall be
entitled to a hearing before the Director or his designee.
The procedure for administrative review shall be as set
out in M.G.L. C. 31. In exercise of his discretion, the
Director shall exclude applicants on the basis of bad moral
character in a nondiscriminatory manner.

18. The Director, if petitioned by an appointing
authority prior to certification to impose a residency
preference pursuant to C. 31, s, 48A, shall impose such
residency preference within each of the four groups
described in paragraph 7 of the February 8, 1974,
Decree.

19. The Director shall disapprove any appointment
unless the appointing authority has furnished said
Director with a written statement of the reasons for
rejecting the appointment of any candidate higher on the
list. Said Director shall furnish a written statement
of these reasons to the Plaintiffs' attorneys, and also
to the candidate upon written request of the candidate.

20. All candidates shall be informed, individually,
and in writing, prior to the time that eligibility lists
are established, that they are required to meet the
following criteria before they can be certified for
appointment:

301

-10-

a. Receive a passing mark on the July Exam. Those individuals who take the July Exam in Spanish must pass the Davis Reading Test.

b. Pass a medical examination. It will be noted that said medical examination will be available for inspection at the office of the Director.

c. Pass a strength and agility test. All candidates shall receive a copy of the Strength and Agility Test for fire fighters detailing the requirements of the Strength and Agility Test.

d. Be determined by the Director to be of good moral character. It will be noted that a copy of the Standards and Procedures For The Screening Of Ex-offenders will be available for inspection at the office of the Director.

e. Provide a certificate of birth or other evidence of his date and place of birth satisfactory to the Director.

Further, each candidate shall receive, at the time provided above:

f. A list of all cities and towns which have an educational qualification for fire fighters.

g. A list of all cities and towns which require an applicant to have a driver's license.

h. A list of all cities and towns which have a minimum height requirement.

302

-11-

i.  A list of all cities and towns which require an applicant to pass a swim test.

21.  The eligibility list which resulted from the August 27, 1971, fire fighter entrance examination shall expire upon the establishment of the eligibility list from the July Exam with the exception of those persons who have been appointed provisional fire fighters from the August 27, 1971, examination eligibility list.  Said provisional fire fighters shall comprise the B pool under paragraphs 7, 8, and 9 of the February 8, 1974, Decree.

22.  Any applicant for fire fighter in any city or town whose application was filed in the Division of Civil Service on or after August 27, 1971, and who had not reached his 35th birthday on August 27, 1971, as required by C. 194 of the Acts of 1974 shall be eligible to take the July Exam, and shall be eligible for appointment, provided he has reached his nineteenth birthday on the date of application and that he meets all other requirements of law.

23.  The Boston Fire Commissioner fully anticipates that at the time that a new eligibility list is posted as a result of the July Exam, there will be sufficient vacancies so that the number of Black and Spanish-surnamed persons hired will approximate the number of provisional appointments made since the entry of the February 8, 1974 Decree.  The Boston Fire Commissioner agrees that prior to the appointment of persons from Group D, the said Commissioner will appoint, if available, a number of

303

-12-

persons from Groups A and C to equal the number of
persons appointed from Group B.

The timetable for appointing Black and Spanish-surnamed
applicants will be governed by the ability of the Depart-
ment to adequately train incoming applicants in accordance
with past practices and will be governed by the method
and ratios of certification as described by paragraphs
8 through 12 of the February 8, 1974 Decree.

24.  The parties agree that Black and Spanish-
surnamed persons who passed a prior fire fighter entrance
examination, if otherwise qualified for placement on the
current eligibility list in accordance with the entrance
requirements set forth in this Interim Consent Decree,
shall immediately be placed at the head of the current
eligibility list. Said persons also shall be certified
for permanent appointment ahead of eligible persons who
comprise Group A, in accordance with the method and ratios
of certification described in paragraphs 8 through 12 of
the February 8, 1974 Decree. Plaintiffs shall furnish
the Director the names of Black and Spanish-surnamed
persons who passed a prior fire fighter entrance exam-
ination.

25.  The parties agree that no individual shall be
certified for permanent appointment unless said indivi-
dual has passed a fire fighter entrance examination.

304

-13-

26. The eligibility list established as a result of the July Exam including Group B as described by Paragraph 21 above, shall be established within six (6) months of said Exam and shall expire two years from the date said list is first established.

27. This Interim Consent Decree is in no way designed to lower the standard for certification of fire fighters.

Consented to this 17th day of April , 1975.

THOMAS A. MELA
Counsel for the NAACP

JOHN HURLEY
Counsel for the Director
of Civil Service

PATRICK J. KING
Counsel for the NAACP

MARY S. SEIGLE
Counsel for the Director
of Civil Service

LINDA JAMIESON
Counsel for the United States
Department of Justice

THOMAS F. MCKENNA
Counsel for the City of
Boston and the Boston Fire
Commissioner

4-17-75
Approved and so entered.

Frank H. Friedman
United States District Judge

305

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>   Plaintiff<br><br>   v.<br><br>CITY OF BOSTON, et al.<br>   Defendants | )<br>)<br>) CIVIL ACTION<br>) NO. 73-269-F<br>)<br>)<br>)<br>) |
| BOSTON CHAPTER, NAACP, et al.<br>   Plaintiffs<br><br>   v.<br><br>NANCY B. BEECHER, et al.<br>   Defendants. | )<br>)<br>)<br>) CIVIL ACTION<br>) NO. 72-3060-F<br>)<br>)<br>) |

## AGREEMENT TO EFFECTUATE INTERIM CONSENT DECREE

This Court having approved and entered an Interim Consent Decree in this action on April 17, 1975, to allow a new firefighter entrance examination to be given, and said examination having been given, the parties consent to entry of this Agreement to permit the marking of said examination and the establishment of an eligibility list for the position of firefighter in the Commonwealth of Massachusetts.

WHEREFORE, the parties agree that:

1.  The Division of Personnel Administration (formerly known as the Division of Civil Service, and hereinafter, the "Division") shall provide individual applicants with their score on the IPMA examination

307

- 2 -

administered July 10, 11, 12, 1975, but shall not give
the scores of any individual, or group of individuals,
to an appointing authority.

2.  The 26 (twenty-six) Spanish-surnamed applicants
who took the IPMA in Spanish and received a passing score
but who did not successfully complete the Davis Reading
Test, promptly will be allowed to re-take the Davis
Reading Test.  The reason for this re-test is that there
was a misunderstanding among the parties as to its
administration.  Said applicants who successfully
complete the Davis Reading Test shall be considered
for certification in the same manner as other applicants.

3.  The Division shall administer a medical exam-
ination to each applicant being considered for
certification.  An applicant who fails said examination
shall have the right to be re-tested by a medical
review board.  At the time of his failure of his first
examination, said applicant shall be informed, in
writing, of the right to be re-tested by a medical
review board, as well as the rights set forth in
Paragraph 4 of this Agreement.

4.  An applicant who, after failing his first
medical examination, appeals to the medical review
board and is found medically unfit by the medical
review board, shall be removed from the list of those
applicants being considered for certification, provided
that an applicant may file his one appeal to the
medical review board within one year of his failure of

308

the first exam, and further provided that appeals will
be processed and completed within 30 (thirty) days of
the time an appeal is filed.  Nothing in this paragraph
shall be deemed to extend the life of the eligibility
list.

5.  An applicant who fails his initial medical
examination shall not be disqualified from taking the
physical fitness test if (a) the examining physician
certifies that the reason for his failure of said
examination would not pose a threat to his health and
safety if he were to take the physical fitness test and
(b) the applicant signs a waiver holding the Division
and physician harmless from liability for injury and for
death, as a result of the applicant's condition becom-
ing aggravated by the physical fitness test.

6.  The Division or, on its behalf, the Mass-
achusetts Firefighting Academy, shall administer a
physical fitness test, to each applicant being considered
for certification.  The test will consist of 6 (six) dif-
ferent events and given on a pass/fail basis.  A copy of
the physical fitness test, which is attached hereto, will
be mailed, together with IPMA results, to each applicant
who has passed the IPMA.  Each applicant shall be al-
lowed to attempt each event twice on the same day.  The
plaintiffs take no position as to the validity of the
physical fitness test.  The parties reserve their right
to petition the Court for resolution of any disputes
resulting from the physical fitness test having a
significant impact on any group, in accordance with
Paragraph 13 of the Interim Consent Decree.

309

- 4 -

7. If an applicant fails the physical fitness test, his name will not be placed on the certification list for which he was being considered. Said applicant shall have the right to retake the entire physical fitness test, when he is again being considered for certification, provided that he may choose the certification at which to re-take said test. At the time of his failure of his first test, said applicant shall be informed, in writing, of the right to re-take said test, including the right to choose the certification at which to re-take said test. If an applicant, after failing at his first test, fails this second test, he shall be removed from the list of those applicants being considered for certification.

8. The Division shall certify applicants who have satisfied the IPMA, the medical examination, the physical fitness test, and the moral character test, prior to certification. In the cities of Boston, 310 Brockton, Cambridge, Chelsea, Holyoke, Lawrence, Lynn, New Bedford, Springfield and Worcester, the Division shall give additional firefighter examinations, during the life of the list from the July, 1975, exam, if it appears, or in fact becomes, impossible to certify applicants to the above-named cities in accordance with the Decree of this Court, dated February 8, 1974, and the Interim Consent Decree, dated April 17, 1975, in a manner which will effectuate said Decrees. In cities and towns, other than the above-named, the Division

- 5 -

shall not be required to give additional examinations during the life of the list from the July, 1975, exam even if the A and C pools become depleted. For each of the above-named cities, plaintiffs promptly will be provided a list of eligibles, and at the times each is sent a certified list of eligibles, a copy of said certification.

9. Plaintiffs, at the time when applicants are sent their results on the IPMA, will be furnished with the name, address (including, if possible, address labels) and score of each minority applicant. Plaintiffs, promptly, will be furnished with the name and address of each of the 26 (twenty-six) Spanish-surnamed applicants who has the right to re-take the Davis Reading Test, and will be furnished with the score for each such applicant who re-takes the Davis Reading Test. Plaintiffs, on a monthly basis, will be furnished with the name and address of each candidate who fails the physical fitness test, and the reasons therefor. In accordance with Paragraph 20 of the Interim Consent Decree, applicants who pass the IPMA will be mailed, together with IPMA results, the information about certification and hiring criteria set forth in said Paragraph 20, and applicants will be informed of the obligation to notify the Division of any change of mailing address.

311

- 6 -

10.    The Fire Commissioner of the City of Boston agrees that minority applicants will be appointed 40 (forty) at a time, and candidates from Group B will be appointed 40 (forty) at a time, until the number of minority appointments equals the number of white appointments made since February 8, 1974, in conformity with Paragraph 23 of the Interim Consent Decree and the letter from the Fire Commissioner to Judge Freedman, dated April 16, 1975.

11.    No fire department which is currently subject to the minority preference required by Paragraphs 8-12 of the Decree of February 8, 1974, may be exempted from said Paragraphs unless the appointing authority has first petitioned the Division that the percentage of post-probationary minority uniformed personnel equals the percentage of minorities in the city or town served by said department, and the parties have otherwise satisfied Paragraph 7 of the Interim Consent Decree.

12.    The parties reserve all rights to move this Court to resolve any dispute under this Agreement or the Interim Consent Decree.

Agreed to this day of _____ , 1975.

THOMAS A. MELA
Counsel for the NAACP

JOHN HURLEY
Counsel for the
Director of Personnel
Administration

312

PATRICK J. KING
Counsel for the NAACP

MARC S. SEIGLE
Counsel for the
Director of Personnel
Administration

- 7 -

_Linda Jamieson_                          _Thomas Williams_
LINDA JAMIESON                            THOMAS F. MCKENNA
Counsel for the United States             Counsel for the City of
Department of Justice                     Boston and the Boston
                                          Five Commissioner


Approved and entered by:

_Frank H. Friedman_
U.S. DISTRICT JUDGE

DATED: _November 25_ , 1975

313

# HUMAN RESOURCES DIVISION
## CIVIL SERVICE UNIT

**December 31, 2004**

### FIRE DEPARTMENTS COVERED BY CIVIL SERVICE

*denotes pension reform municipality  
+ denotes no residency requirement

# denotes roster list  
% denotes Chapter 31, Section 58A

| CONSENT DECREE COMMUNITIES | | NON-CONSENT DECREE COMMUNITIES | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Cambridge*#  | 838 | Abington*     | 709 | Hingham          | 702 | Reading*#     | 421 |
| Chelsea*#    | 803 | Acushnet      | 645 | Hopedale*        | 353 | Revere*#      | 801 |
| Fitchburg%   | 309 | Agawam*       | 253 | Holbrook%#       | 624 | Rockland*     | 706 |
| Framingham*  | 450 | Amesbury*     | 504 | Hudson           | 443 | Salem*#       | 527 |
| Holyoke*     | 245 | Andover*      | 512 | Hull*#           | 701 | Saugus*#      | 525 |
| Lawrence*#   | 511 | Arlington     | 433 | Ipswich#         | 518 | Scituate*     | 704 |
| Lowell*#     | 411 | Athol*        | 304 | Leominster       | 315 | Shrewsbury%   | 334 |
| Newton       | 453 | Attleboro*    | 627 | Ludlow*          | 247 | Stoneham#     | 431 |
| Somerville*  | 839 | Bedford       | 427 | Lynn*            | 526 | Stoughton*    | 622 |
| Springfield* | 249 | Belmont%      | 437 | Malden           | 835 | Swampscott%#  | 528 |
|              |     | Beverly*      | 530 | Mansfield        | 628 | Taunton#%     | 634 |
|              |     | Billerica     | 418 | Marblehead       | 529 | Tewksbury*#   | 412 |
|              |     | Boston%       | 807 | Marlborough*#    | 449 | Wakefield*    | 422 |
|              |     | Bourne%       | 730 | Marshfield*      | 708 | Waltham*#     | 448 |
|              |     | Brockton*     | 630 | Medford*         | 834 | Ware#         | 243 |
|              |     | Brookline*    | 841 | Melrose*#        | 432 | Watertown     | 440 |
|              |     | Burlington#   | 419 | Methuen#         | 501 | Wellesley     | 452 |
|              |     | Canton*#      | 610 | Milford          | 345 | Westfield#    | 244 |
|              |     | Chelmsford#   | 410 | Milton*          | 811 | W. Springfield| 248 |
|              |     | Chicopee*     | 246 | Nahant*#         | 534 | Westwood%     | 607 |
|              |     | Clinton*      | 318 | Natick%          | 451 | Weymouth*     | 625 |
|              |     | Cohasset*     | 703 | Needham*         | 601 | Whitman*      | 711 |
|              |     | Danvers*      | 521 | New Bedford*     | 644 | Wilmington#   | 413 |
|              |     | Dedham*%      | 603 | Newburyport*     | 507 | Winchester%   | 430 |
|              |     | Dracut        | 406 | North Adams*#+   | 103 | Winthrop*     | 802 |
|              |     | Easthampton#  | 239 | Northampton#     | 234 | Woburn*#      | 420 |
|              |     | Easton        | 629 | North Andover#   | 513 | Worcester%#   | 333 |
|              |     | Everett*#     | 836 | N. Attleboro     | 626 |               |     |
|              |     | Fairhaven*    | 646 | North Reading*#  | 414 |               |     |
|              |     | Fall River*#  | 641 | Norton           | 631 |               |     |
|              |     | Falmouth%     | 731 | Norwood          | 609 |               |     |
|              |     | Franklin*     | 616 | Peabody*#        | 520 |               |     |
|              |     | Gardner*      | 307 | Pittsfield*      | 112 |               |     |
|              |     | Gloucester*#  | 532 | Plainville*      | 619 |               |     |
|              |     | Greenfield*#  | 213 | Plymouth*        | 723 |               |     |
|              |     | Hanover*      | 707 | Quincy*          | 812 |               |     |
|              |     | Haverhill#    | 502 | Randolph*        | 613 |               |     |

*denotes pension reform municipality  
+ denotes no residency requirement

# denotes roster list  
% denotes Section 58A