UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ERIC TRAVERS, MICHAEL BOUDREAU, JOSEPH COLELLA, CLIFFORD ARPINO, MICHAEL MARINI, ROCCO MARINI, and BRICE ADAMS,<br>    Plaintiffs,<br><br>v.<br><br>CITY OF NEWTON, MASSACHUSETTS, and DAVID B. COHEN, In his capacity as Mayor of the City of Newton, Massachusetts;<br>    Defendants. | Civil Action No. 04-12635-RWZ |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT

I.  **INTRODUCTION**

The Plaintiffs, Eric Travers, Michael Boudreau, Joseph Colella, Clifford Arpino, Michael Marini, Rocco Marini, and Brice Adams, hereby submit their Memorandum of Law in Support of their Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment.

Between 2002 and 2004, the City of Newton (the "City") failed to consider the Plaintiffs for positions as entry-level firefighters in the Newton Fire Department (the "Department") because of their race based on a selection system that violates the Fourteenth Amendment to the United States Constitution (asserted through 42 U.S.C. § 1983). The City hired lower-scoring minority candidates under the terms of the consent decree in Boston Chapter, NAACP v. Beecher, 371 F. Supp. 507 (D. Mass. 1974) (the

1

"Beecher decree"), despite the fact that the percentage of minorities in the Department's entry-level ranks had already far surpassed the percentage of minorities in the general population of Newton. Because the Defendants' hiring cannot be justified based on the decree, and because the Defendants may not use this otherwise unconstitutional quota system as a crutch to maintain racial parity, the Defendants have committed clear and patent violations of the Plaintiffs' civil rights, and the Plaintiffs are entitled to judgment in their favor.

## II.   CONCISE STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.   On February 11, 1974, in the case of Boston Chapter, NAACP v. Beecher, 371 F. Supp. 507 (D. Mass. 1974) (Beecher), this Court held that the Commonwealth and City of Boston had engaged in discrimination against black and Hispanic firefighter applicants in Boston and other communities in the Commonwealth. To remedy the unlawful race discrimination, the Court ordered that, for all Civil Service communities with a minority population of greater than 1 percent,[1] the Director of the Division of Civil Service (now the Administrator of the Human Resources Division) should create eligibility lists for entry-level firefighter positions that rank one minority candidate for every three non-minority candidates.[2] Id. at 520-523. Such race-based consideration was to continue until "a city or town achieve[d] a complement of minorities commensurate with the percentage of minorities within the community." Id. at 523 ¶ 12.

---

[1] The decree defines "minority" as "black and Spanish-surnamed" individuals. Id. at 520-523. For ease of reference, this memorandum adopts that formulation, and the term "minority" is used herein to refer only to black and Hispanic individuals.

[2] The ratio was one minority candidate for every one non-minority candidate in the cities of Boston and Springfield. Id. at 522 ¶ 9.

2. After the First Circuit affirmed this Court's <u>Beecher</u> decision, 504 F.2d 1017 (1st Cir. 1975), the parties entered into an Interim Consent Decree, [Exhibit A], and an Agreement to Effectuate Interim Consent Decree, [Exhibit B], which effectuated the Court's <u>Beecher</u> decree. These subsequent agreements provided that a community would be exempted from the <u>Beecher</u> decree only after "the appointing authority [of the community] first petitioned the Division that the percentage of post-probationary minority uniformed personnel equals the percentage of minorities in the city or town served by said department . . . ." [Exhibit B ¶ 11.]

3. Since it had a minority population of greater than 1 percent in 1975, the City of Newton fell under the <u>Beecher</u> decree and thereafter began receiving certification lists from the Commonwealth ranking one minority candidate for every three non-minority candidates. [Answer ¶ 8.] By at least 2001, the complement of minority firefighters in the City of Newton far exceeded the percentage of minorities residing in the City. [Answer ¶ 12.] However, the City never petitioned the Commonwealth Human Resources Division (HRD) to be released from the terms of the <u>Beecher</u> decree, and it therefore continued to request race-based certification lists in hiring firefighters and continued to consider one minority candidate for every three non-minority candidates. [Answer ¶ 8, <u>see also</u> Exhibit C (HRD list of communities still covered by the <u>Beecher</u> decree) & Exhibit D (process for seeking exemptions from <u>Beecher</u> requirements).]

4. According to the 2000 U.S. Census Data, the percentage of black and Hispanic residents of Newton is 5.0 percent.[3] [See Exhibit E.] As of 2002, just before hiring for the 2002 Civil Service list, 16 percent (30 firefighters) of the Newton firefighter

---

[3] This percentage is calculated by adding the number of non-Hispanic black residents (1,894) to the number of Hispanic residents (2,302) and dividing by the total population of Newton (83,829).

3

force were black or Hispanic, out of a total of 185 firefighters. [See Affidavit of Francis Capello, Jr. (attached hereto as Exhibit F).]

5. The Plaintiffs in this case are all white, adult male residents of the City of Newton who sat for the firefighter exam in or about April 2002 and applied for firefighting positions with the Newton Fire Department. [Complaint ¶¶ 3 & 6.] Despite the fact that they all scored very well on the exam – between 89 and 95 out of 100 – Plaintiffs were not reached for consideration by the City when the City hired firefighters between 2002-2004 based on the results of the April 2002 exam. [Answer ¶ 7.]

6. Between 2002 and 2004, the City hired forty-three (43) new firefighters, eleven (11) of whom were minority candidates. [Answer ¶ 7; Exhibit F.]

7. At least eight (8) of these minority candidates scored lower than the Plaintiffs and had no other statutory preference that would place them above the Plaintiffs in the rankings had race not been considered. [Answer ¶ 8.] This raised the percentage of minorities on the force to near 20 percent. [See Exhibit F.]

8. Normally, in making firefighter appointments, the City will request a certification list from the Commonwealth HRD for a certain number of positions. [See, e.g., Exhibit G.] The Commonwealth will then provide a list of candidates ranked solely by score. However, in Beecher communities such as Newton, HRD arranges the list so it includes one minority candidate for every three non-minority candidates.[4] [Answer ¶ 8.] The City must then make its selection from among the top ranked candidates following a $[2n + 1]$ formula, where $n$ is the number of openings. [See Exhibit H, Personnel Administration Rules, PAR.09.] However, the City may only select from among those

---

[4] In certain cities, such as Boston, the certification lists were created with one minority candidate for every one non-minority candidate.

4

willing to accept an appointment, and the certification list provides space for individuals to so indicate. [Exhibit H, PAR.09; see, e.g., Exhibit G.]

9. On the civil service list, minority candidates in the protected group are designated with a "CB" or "CH" to the right of the candidates' names. [See Deposition of Sally McNeely of HRD, attached hereto as Exhibit I, p. 51.] As relevant here, non-minority candidates are designated with a "D" next to their names. Id. In addition, individuals with tie scores are indicated in the box to the right of their names with a designation of "D-TIE" for non-minority candidates and "C-TIE" for minority candidates, with the last person in the tie group indicated as "D-TIE END" or "C-TIE END." Id. at 42-43.

10. With regard to the particular civil service list in this case, [Exhibit G], as Personnel Administration Rule PAR.09 indicates, the City was required to make its selections from among those who signed the certification list indicating their willingness to accept a position, as follows:[5]

1. Beth Davis [p.1]
2. Kevin Mancini [p.1]
3. Aaron MacGovern [p.4]
4. Antonio Mariano [p.4]
5. Paul Stevens [p.4]
6. Anthony Burgie** [p.4]
7. Kevin Yerardi [p.4]
8. Brice Adams* [p.4]
9. Brian Langan [p.4]
10. Rocco Marini* [p.4]
11. Joseph Colella* [p.5]
12. Vladimir Formanek [p.5]
13. Chrisopher Proia [p.5]
14. Eric Travers* [p.5]
15. Donnell Harvey** [p.5]
16. Michael Boudreau* [p.5]
17. Kathryn Doherty [p.5]
18. Michael Marini* [p.6]
19. Michael Sonia [p.6]
20. Clifford Arpino* [p.6]

11. Since the City hired eight lower-scoring minority candidates in previous rounds of hiring from 2002-2004, [supra ¶ 7], the first eight (8) willing candidates from this list would likely already have been reached and/or hired had the City not been using

---

[5] The plaintiffs are marked with an asterisk (*) and minority candidates are marked with a double asterisk (**).

5

race as a consideration. Since plaintiff Brice Adams is among the first eight (8) individuals on this list who was willing to accept an appointment, and because plaintiff Rocco Marini is in a tie group with Mr. Adams, [Exhibit G], at least those two plaintiffs would have been reached for consideration and likely hired but for the City's unlawful use of race in its previous hiring decisions in 2002-2004.

12. As indicated on the top of the certification list, [Exhibit G], because the City sought to hire six (6) individuals off of this certification list, it had to make its selection from among the first thirteen (13) highest ranked individuals. [Exhibit H, PAR.09.] Without any correction for the previous race-based hirings, and even keeping the minority candidates in their current spots, consideration would include only four (4) of the plaintiffs – i.e., Adams, R. Marini, Colella, and Travers (tied with Proia). [Exhibit G.] However, if those eight lower-scoring minority candidates had not been hired in previous rounds, not only would Adams and Marini have been considered and at least one of them likely hired in the previous rounds, but consideration in this round would extend to all the remaining plaintiffs, and at least four (4) of them would be among the top six (6) candidates, giving them an excellent chance to be hired.[6] Id.

13. Unless the City of Newton requests to be exempted from the consent decree, the Commonwealth HRD will continue creating certification lists using the one-for-three ranking approach using race as a consideration in hiring even though racial parity has long been achieved and surpassed. [See Exhibit D.]

---

[6] For this calculation, we must assume that the top two (2) willing minority candidates on this list scored even lower than the candidates on the previous lists, eight (8) of whom the City has admitted scored lower than the plaintiffs. Therefore, assuming the top eight (8) scoring candidates off of this list were hired in previous rounds, excluding the two likely lower-scoring minority candidates (Burgie (#6) and Harvey (#15)), consideration for this round would actually begin with candidate number 10 (plaintiff Marini), and the top six (6) candidates would include plaintiffs R. Marini (#10), Colella (#11), Travers (#14), and tied candidates Boudreau (#16) and M. Marini (#18).

### III. ARGUMENT

<u>The Defendants' use of race-based considerations in hiring entry-level firefighters for the City of Newton violates the Plaintiffs' right to equal protection under the U.S. Constitution.</u>

A.   <u>Standard of Review.</u>

The City of Newton failed to reach and thus select Plaintiffs, who are non-minority men, for positions as entry-level firefighters between 2002 and 2004 while at the same time selecting lower-scoring minorities for those positions. As set forth below, such conduct violates the Equal Protection Clause of the U.S. Constitution, which states that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

It is well established that all racial classifications by governmental actors must be strictly scrutinized under the Equal Protection Clause. <u>Gratz v. Bollinger</u>, 539 U.S. 244, 270 (2003) (quoting <u>Adarand Constructors, Inc. v. Pena</u>, 515 U.S. 200, 224 (1995)). <u>See also</u> <u>City of Richmond v. J.A. Croson Co.</u>, 488 U.S. 469 (1989) (<u>Croson</u>); <u>Wygant v. Jackson Bd. of Educ.</u>, 476 U.S. 267 (1986). The strict scrutiny under which governmental race-based actions must be measured requires that [1] any racial classification be justified by a compelling governmental interest, and [2] the means utilized by the government be narrowly tailored to achieve that goal. <u>Gratz</u>, 539 U.S. at 270. Because racial classifications are potentially harmful to the entire body politic, strict scrutiny applies to such classifications regardless of whether the government's intent is considered benign or remedial. <u>Adarand Constructors, Inc.</u>, 515 U.S. at 225-26, 235.

7

A very narrow exception to the bar on making hiring decisions based upon racial classification occurs when a court permits a governmental agency to remedy the effects of documented past discrimination by permitting, on a <u>temporary</u> basis, hiring based upon some race-based formula. See <u>Boston Police Superior Officers Federation v. City of Boston</u>, 147 F.3d 13, 21 (1st Cir. 1998), <u>Boston Chapter NAACP, Inc. v. Beecher</u>, 504 F.2d 1017, 1026-37 (1st Cir. 1974), <u>Mackin v. City of Boston</u>, 969 F.2d 1273, 1277 (1st Cir. 1992). However, as described below, such remedial decrees become unconstitutional once the reason for such order has been satisfied. <u>Quinn v. City of Boston</u>, 325 F.3d 18, 24 (1st Cir. 2003).

Pursuant to the original <u>Beecher</u> decree, a municipality was required to end race-based hiring as soon as the municipality had achieved "a complement of minorities commensurate with the percentage of minorities in the [relevant] community. . . ." <u>Boston Chapter, NAACP v. Beecher</u>, 371 F. Supp. at 523 ¶ 12. More recently, the First Circuit made clear in <u>Quinn v. City of Boston</u>, <u>supra</u>, that such race-based hiring must terminate as soon as the percentage of minorities in the entry-level position of firefighter achieved "rough parity" with the percentage of minorities in the general population of the city involved. <u>Quinn</u>, 325 F.3d 24. The First Circuit's decision in <u>Quinn</u> makes clear that once such parity has been achieved, any further type of hiring based on race is strictly unconstitutional and violates the equal protection rights of the white applicants. <u>Id.</u> at 25-26. Even more recently, this principle has been affirmed in <u>DeLeo v. City of Boston, et al.</u>, Civ. Act. No. 03-12538-PBS (D. Mass. Nov. 23, 2004) (attached hereto as Exhibit J).

      B.      Here, The City Of Newton Has No Plausible Defense To Its Race-Based Hiring Process.

According to the Commonwealth of Massachusetts HRD, which monitors compliance with the Beecher decree, once a community has achieved a percentage of minorities in a fire or police department that is commensurate with the number of minorities in that municipality, the city is obligated to petition HRD to be removed from the Beecher requirements. [See Exhibit D.] Because civil service law, as well as most municipal ordinances, require residency as a condition of hiring in a community, the relevant labor force measurement for determining whether rough parity has been achieved is the municipality involved. Quinn, 325 F.3d at 22, Beecher, 371 F. Supp. at 523.

Applying these principles to the present case, the City of Newton has clearly and unequivocally violated the equal protection rights of the plaintiffs. First, it is simply undisputed that Newton has utilized a system for hiring based on the Beecher decree since the mid-1970's in which one minority is placed on the civil service list for every three non-minorities. [Answer ¶ 8.] As a result of such process, the City of Newton many years ago achieved a complement of minority firefighters on the Newton Fire Department which exceeded the percentage of minorities who reside in the City of Newton. Yet rather than requesting to be removed from the Beecher obligations as required by the Equal Protection Clause of the U.S. Constitution and HRD's own policy, the City of Newton, has continued to request from HRD civil service lists which ensure that one minority will be considered for every three non-minorities. In the most recent round of hiring in 2002 to 2004, eleven (11) minorities were hired, at least eight (8) of whom received scores lower than non-minorities who were not reached for consideration. Simply put, the City has essentially hired on a one-for-three basis, regardless of qualifications or score, relying on the Beecher

9

decree far after the City had any lawful equal protection exemption from making hiring decisions strictly upon non-race-based neutral criteria.

It is undisputed that the Plaintiffs would have been reached for consideration had the City not hired based on the Beecher formula. It is essentially undisputed that eight (8) to eleven (11) minorities were hired from 2002 to 2004, and had such Beecher formula not been in effect, all of the Plaintiffs were high enough on the civil service list that they would have been reached for consideration and presumably hired as firefighters for the City of Newton.

As Judge Saris made clear in the DeLeo case, for the purposes of adjudicating the issue of liability, the Plaintiffs need only show that one or more of the Plaintiffs would have been reached for consideration and likely hired had a race-based hiring formula not been utilized. [See Exhibit J.] It is not believed that the Defendants dispute this point. Indeed, an analysis of the relevant civil service list reflects clearly that such individuals would have been reached. As described above, [supra ¶¶ 10-12], had the City not hired the eight lower-scoring minority candidates in previous rounds of hiring from 2002-2004, plaintiffs Brice Adams and Rocco Marini would have been reached for consideration and likely hired but for the City's unlawful use of race in its previous hiring decisions in 2002-2004. Moreover, had the City not hired those eight (8) lower-scoring candidates in previous rounds, not only would Adams and Marini have been considered and at least one of them likely hired in the previous rounds, but consideration in the more recent round, [Exhibit H], would have extended to all the remaining plaintiffs, and at least four (4) of them would be among the top six (6) candidates, [supra ¶ 12].

Therefore, for purposes of liability, it can be conclusively established not only that the City has continued to used race-based hiring long after those race-based considerations were constitutionally permissible, but also that such race-based hiring had a direct impact on the plaintiffs in this case.

## IV.     CONCLUSION

For the reasons stated herein, the Plaintiffs should be granted summary judgment on liability and a hearing should be scheduled to determine remedy. In addition, because, at this point, the Plaintiffs do not understand what defense the Defendants will assert to claim that their hiring is not violative of the Equal Protection Clause, Plaintiffs reserve the right to file a more detailed reply brief when and if the City of Newton raises substantive defenses not anticipated by Plaintiffs.

Respectfully submitted,

ERIC TRAVERS, MICHAEL BOUDREAU, JOSEPH COLELLA, CLIFFORD ARPINO, MICHAEL MARINI, ROCCO MARINI, and BRICE ADAMS,

By their attorneys,

_____
Harold L. Lichten, BBO #549689
Alfred Gordon, BBO #630456
Pyle, Rome, Lichten & Ehrenberg, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 367-7200

Date:   July 1, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on the attorneys of record for each party by U.S. Mail on July 1, 2005.

_____
Alfred Gordon