UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12635-RWZ

ERIC TRAVERS, MICHAEL BOUDREAU, JOSEPH COLELLA,
CLIFFORD ARPINO, MICHAEL MARINI, ROCCO MARINI,
and BRICE ADAMS[*]

v.

CITY OF NEWTON, MASSACHUSETTS and DAVID B. COHEN,
in his capacity as Mayor of the City of Newton, Massachusetts

MEMORANDUM OF DECISION AND ORDER

November 9, 2005

ZOBEL, D.J.

Plaintiffs are white male residents of defendant City of Newton ("City") who took

and passed the firefighter exam administered by the state's Human Resources Division

("HRD") in April 2002 and thereafter applied for entry-level firefighter positions with the

City's fire department. Plaintiffs received relatively high exam scores, but none were

among the pool of candidates considered by the City for available firefighter positions

between 2002 and October 2004, and only four were considered for hiring in October

2004. Plaintiffs have brought suit under 42 U.S.C. § 1983, alleging that their exclusion

from the hiring pool was the result of unconstitutional race discrimination in violation of

the Fourteenth Amendment.

The manner in which Massachusetts municipalities select firefighters has

---

[*]Plaintiffs' motion to add Brice Adams as a plaintiff and to amend the caption
(#14 on the docket) is allowed.

repeatedly been the subject of litigation.  See Quinn v. City of Boston, 325 F.3d 18, 23-24 (1st Cir. 2003) (describing history).  The City, like several other municipalities, has since 1974 been subject to a consent decree known as the "Beecher decree."  See Boston Chapter, NAACP, Inc. v. Beecher, 371 F. Supp. 507 (D. Mass. 1974), aff'd 504 F.2d 1017 (1st Cir. 1974).  Under that decree, when the City seeks to hire entry-level firefighters, it asks the HRD for a certified list of candidates.  For communities subject to the Beecher decree, candidate rankings are based not only on exam score and statutory factors (such as veteran status), but also take into account race; thus, the HRD provides the City with a list that includes one minority candidate for every three non-minority candidates.[1]  Plaintiffs contend that municipalities may select their firefighters in accordance with the Beecher decree only until parity has been achieved between the percentage of minority firefighters and the percentage of minorities in the municipality.  They further allege that although the City had achieved parity by 2001, it continued to comply with the Beecher decree, in violation of the Constitution.  Plaintiffs claim that had the City ceased compliance with the Beecher decree once parity had been achieved, all seven plaintiffs would have been included in a hiring pool sometime between 2002 and 2004.  Before the court are (1) the City's motion to dismiss for failure to join a necessary party, or for an order of joinder; and (2) plaintiffs' motion for judgment on the pleadings or for summary judgment.

I.      Defendant's Motion to Dismiss or for an Order of Joinder

---

[1]For purposes of the Beecher decree, minorities are defined as "black and Spanish-surnamed" individuals.  Beecher, 371 F. Supp. at 520-23.

2

The City moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(7) for failure to join the HRD as a necessary party or, in the alternative, seeks an order of joinder. Rule 19 joinder is required if a party is both necessary, under Rule 19(a), and indispensable, under Rule 19(b). See United States v. San Juan Bay Marina, 239 F.3d 400, 405 (1st Cir. 2001). The City contends that the HRD is a necessary party under Fed. R. Civ. P. 19(a)(1) and 19(a)(2)(ii).[1] The motion is denied.

A party is necessary under Rule 19(a)(1) if "in the person's absence complete relief cannot be accorded among those already parties." Fed. R. Civ. P. 19(a)(1). The City offers no reason why complete relief cannot be accorded among the present parties. Its failure to do so is understandable, in light of the First Circuit's decision in Quinn. There, a group of white firefighter candidates sued the City of Boston, but not the HRD, claiming—as plaintiffs do here—that parity had been achieved and that the City of Boston's continued adherence to the Beecher decree was therefore unconstitutional. See Quinn, 325 F.3d at 25. The First Circuit agreed and remanded the case to the district court to fashion appropriate relief, without anywhere suggesting that HRD's presence was required to accord the plaintiffs complete relief. Id. at 37-39. Nor is the HRD's presence required here; plaintiffs could receive all of the relief they seek in this case without HRD's involvement. Rule 19(a)(1) thus does not apply.

The City also relies on Rule 19(a)(2)(ii), under which a party is necessary if "the person claims an interest relating to the subject of the action and is so situated that the

---

[1]Defendant's motion cites Rule 19(a)(1)(ii), but no such subsection exists, and its memorandum of law makes clear that the motion is based on Rule 19(a)(2)(ii).

disposition of the action in the person's absence may . . . leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."  Fed. R. Civ. P. 19(a)(2)(ii). Compulsory joinder is not appropriate under this subsection either.  First, the HRD has not sought to intervene in the action and thus has not "claim[ed] an interest" in the action.  "[I]ts decision to forgo intervention indicates that the [HRD] does not deem its own interests substantially threatened by the litigation," a determination that "the court should not second-guess . . ., at least absent special circumstances."  San Juan Bay Marina, 239 F.3d at 407.  Indeed, the HRD's failure to intervene is unsurprising, since the instant action is a challenge to the City's continued compliance with the Beecher decree; it does not attack the Beecher decree itself, nor the HRD's administration of the exam, nor the HRD's creation of race-conscious candidate lists for municipalities properly under the Beecher decree.  Accordingly, the HRD is not a party "claim[ing] an interest" in the action.

Rule 19(a)(2)(ii) is also inapplicable because the City has not shown that it is "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" if the HRD is not joined.  The City claims that if plaintiffs prevail, the City will be required to hire firefighters from the candidate list provided by the HRD to municipalities not subject to the Beecher decree; that list is based strictly on exam score and statutory factors, such as veteran status.  If it selects its firefighters from this

list, the City worries that it may be subject to claims of traditional race discrimination.[2]
The City thus wants the HRD to be a party to this action so that if plaintiffs prevail, the
constitutionality of HRD's examination may immediately be litigated before the City is
required to adopt a hiring process based solely on that exam.

　　While this argument has a certain logic, the City has not sufficiently
demonstrated that it will be "subject to a <u>substantial</u> risk of incurring double, multiple, or
otherwise inconsistent obligations."  Fed. R. Civ. P. 19(a)(2)(ii) (emphasis added).  The
risk that the City foresees is contingent on several factors, including: (1) plaintiffs'
success in this case; (2) defendant's adoption of a selection process based solely on
the HRD examination; (3) the filing of a suit by a group of minority firefighter
candidates, claiming that the City's new non-<u>Beecher</u> selection process resulted in
unconstitutional race discrimination; and (4) a finding for the minority plaintiffs.  The
City has not shown a "substantial" likelihood that all of these conditions will emerge.

　　Indeed, defendant's fear of incurring inconsistent obligations is particularly
misplaced since it has some degree of control over its own vulnerability to future
claims.  Current Equal Protection law makes clear that municipalities may take race into
account in employment decisions, as long as their practices are narrowly tailored to
achieve the goal of remedying past racial discrimination.  <u>See</u> <u>Boston Police Superior</u>

---

　　　　[2]The City argues that the HRD examination may be subject to claims of race
discrimination because (1) the HRD has failed to validate the exam in accordance with
EEOC guidelines, as required by the <u>Beecher</u> decree, <u>see</u> <u>Beecher</u>, 371 F. Supp. at
514; and (2) the fact that a suit alleging that the HRD exam results in unconstitutional
race discrimination has recently been filed against both the HRD and another
municipality.  <u>See</u> Complaint, <u>Bradley v. City of Lynn</u>, No. 05-10213-PBS (D. Mass.
Feb. 3, 2005).

Officers Federation v. City of Boston, 147 F.3d 13, 20-21 (1st Cir. 1998) (race-based promotion not required by consent decree satisfied strict scrutiny); DeLeo v. City of Boston, No. 03-12538-PBS, at 29 (D. Mass. Nov. 23, 2004) (in reverse discrimination suit involving similar consent decree governing police department, court noted that city could adopt race-conscious hiring practices as a constitutional alternative to the consent decree).  See generally Grutter v. Bollinger, 539 U.S. 306, 342 (2003) (race-based preferences can survive strict scrutiny).  Since the City has some say in the hiring practices it adopts once it is no longer subject to the Beecher decree, it may design its hiring practices so as to avoid any potential constitutional pitfalls it believes the HRD examination contains.

The risk of inconsistent obligations envisioned by the City in the HRD's absence is therefore speculative rather than substantial, and that the constitutionality of the HRD exam is "not relevant to the disposition of this case."  Bank One Texas, N.A. v. A.J. Warehouse, Inc., 968 F.2d 94, 100 (1st Cir. 1992).  Defendant's motion for dismissal or joinder is denied.

II.    Plaintiffs' Motion for Judgment on the Pleadings or for Summary Judgment

Plaintiffs have moved for judgment on the pleadings or for summary judgment, and their motion is currently unopposed.[3]  Because their papers refer to "matters outside the pleading," I shall treat the motion as a motion for summary judgment.  See Fed. R. Civ. P. 12(c).  That means I may draw reasonable inferences in the City's favor

---

[3]Defendant requested and received additional time to file an opposition, but has not done so; the date proposed by defendant—September 9, 2005—has passed.

and evaluate the record in the light most favorable to it.  See Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).  Summary judgment is appropriate only if no genuine issue of material fact still in dispute.  See Fed. R. Civ. P. 56(c).  The fact that plaintiffs' motion is unopposed does not automatically entitle them to judgment; I must still be persuaded that undisputed facts entitle them to judgment as a matter of law.  See Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1517 (1st Cir. 1991) ("The failure of the nonmoving party to respond to a summary judgment motion does not in itself justify granting summary judgment.").

The key fact in this case is undisputed.  The parties agree that racial parity between the fire department and the City's population had been achieved and surpassed prior to 2002.  (Answer ¶ 12 (admitting that "by 2001, the complement of minority fire fighters exceeded the percentage of minority individuals residing in the City")).  Under the First Circuit's decision in Quinn, once parity has been achieved, a municipality's continued adherence to the Beecher decree is unconstitutional.  See 325 F.3d at 37 ("[T]he City's continued resort to race-based preferences from and after the time when parity was achieved fails the second prong of the strict scrutiny analysis.").  The City's continued adherence to the Beecher decree during the 2002 to 2004 period violated the Equal Protection Clause.

The only issue before the court is therefore whether plaintiffs are entitled to relief, which raises the question of standing.  See Cotter v. City of Boston, 323 F.3d 160, 166 (1st Cir. 2003).  This question cannot be resolved on the current record.  Plaintiffs seek both damages and injunctive relief (Compl. ¶ 1), and are required to

demonstrate their entitlement as to both types of relief.  See Cotter, 323 F.3d at 166.

But it is unclear which plaintiffs, if any, have suffered any tangible injury, or whether

any such alleged injury is causally linked to the City's constitutional violation.  See

Donahue v. City of Boston, 304 F.3d 110, 118 (1st Cir. 2002).  Nor is it apparent from

the record whether any of the plaintiffs remains "able and ready" to be hired as

firefighters, which is a prerequisite to the grant of prospective relief.  See Donahue v.

City of Boston, 371 F.3d 7, 12 (1st Cir. 2004).  I am thus unable to determine which

plaintiffs have standing to seek relief, or what form of relief they are due, rendering

summary judgment inappropriate.  See Munoz-Mendoz v. Pierce, 711 F.2d 421, 425-26

(1st Cir. 1993).


III.    Conclusion

        Defendant's motion to dismiss or for an order of joinder (#7 on the docket) is

denied.  Plaintiffs' motion to add one plaintiff and to amend the caption (#14 on the

docket) is allowed.  Plaintiffs' motion for judgment on the pleadings or for summary

judgment (#15 on the docket) is denied.


_____                    /s/ Rya W. Zobel_____
        DATE                             RYA W. ZOBEL
                                         UNITED STATES DISTRICT JUDGE